## UNITED STATES v. MUTARIELLI.
### No. 8901.

Circuit Court of Appeals, Third Circuit.

Argued Nov. 7, 1945.

Decided Nov. 27, 1945.

---

926

Thomas D. McBride, of Philadelphia, Pa., for appellant.

Thomas J. Clary and Gerald A. Gleeson, U. S. Atty., both of Philadelphia, Pa., for appellee.

Before MARIS, GOODRICH, and O'CONNELL, Circuit Judges.

MARIS, Circuit Judge.

The defendant appeals from his conviction in the district court on four indictments which charged him with selling meat at over ceiling prices in violation of the Emergency Price Control Act of 1942. He operates both a slaughterhouse and a retail meat market in Philadelphia. Two of the indictments charged him with making sales of beef at wholesale in violation of Revised Maximum Price Regulation No. 169.[1] The other two charged retail sales of beef in violation of Maximum Price Regulation No. 355.[2]

As to the wholesale sales the defendant asserts that he is a nonprocessing slaughterer and that RMPR 169 had been declared invalid and set aside as to such slaughterers by the Emergency Court of Appeals on March 29, 1945 prior to the time that the jury rendered its verdict of guilty in his case, by reason of which his conviction was erroneous. We find this contention to be wholly without merit.

■ In the first place the record does not support the defendant's contention that he is a nonprocessing slaughterer. Such slaughterers are defined in Section 5 of the Directive of the Office of Economic Stabilization filed on October 26, 1943,[3] as those "who during the year 1942, or a representative portion thereof, sold and who currently sell 98% or more of the total dressed carcass weight of cattle slaughtered by them in the form of carcasses, wholesale cuts, frozen boneless beef (Army specifications) (carcass equivalent) or ground beef." The evidence here indicates, as we have said, that the defendant operates a retail meat market as well as a slaughterhouse. It indicates that he processes by cutting up and selling at retail at least a part of the beef which he slaughters and it furnishes no support whatever for a finding that the beef thus processed amounts to less than 2% of his total slaughter.

Moreover it is clear that the defendant could not in any event benefit from the judgment of the Emergency Court of Appeals to which he refers. The judgment in question was rendered on March 29, 1945 in the case of Heinz v. Bowles, Em.App., 149 F.2d 277. It set aside RMPR 169 insofar as applicable to nonprocessing slaughterers as defined in the Directive filed October 26, 1943. But under the express terms of Section 204(b) of the Emergency Price Control Act, 50 U.S.C.A.Appendix § 924(b), the "effectiveness of a judgment of the court enjoining or setting aside, in whole or in part, any such regulation, order, or price schedule shall be postponed until the expiration of thirty days from the entry thereof." On April 2, 1945, four days after its entry, the Emergency Court of Appeals vacated the judgment and, after reconsideration, dismissed the original complaint on July 31, 1945. Heinz v. Bowles 150 F.2d 546.

■ It thus appears that the judgment upon which the defendant relies never did become effective to set aside the regulation.

---

[1] 7 F.R. 10381.
[2] 8 F.R. 4423.

[3] 8 F.R. 14641.

Consequently the regulation remained in force and supported the indictment and conviction of the defendant. Indeed the imposition of sentence upon him did not take place until April 5, 1945, three days after the Emergency Court of Appeals had actually vacated the judgment.

The defendant also asserts that his convictions under the indictments charging retail sales in violation of MPR 355 were erroneous. His principal contention is that the Government failed in its proof in that its witnesses testified that the steaks which they purchased at his meat market at over ceiling prices were trimmed before weighing. He suggests that the weight of the trimmings, which was not shown, would have been enough to bring the amounts charged down to the legal ceiling price per pound.

Section 20 of MPR 355, provides that all fat exceeding one inch in thickness shall be trimmed from steaks of the kind which the defendant sold. It also provides that they shall be thus trimmed "before the cuts may be weighed or sold to the customer." The maximum prices which the regulation fixes for beef cuts are for the sale of those beef cuts described in Section 20. Section 1 provides that only such beef cuts may be sold.

It will thus be seen that the regulation imposes its ceiling prices upon the steaks in question after they have been trimmed and not before. Accordingly the defendant was not entitled to include the trimmings in the weight of the steaks which he sold, and was prohibited from charging more than the ceiling price for the meat actually weighed for the customer. Not only is this a reasonable interpretation of the language of the regulation but any other would render its enforcement well nigh impossible.

In two of the indictments the defendant and Harry G. Sobel, who was a clerk in his meat market, were joined. The jury found Sobel, who actually made the sales, not guilty. The defendant argues that his own conviction in these instances was without foundation. We cannot agree. The jury may well have found from the evidence that Sobel was acting solely for the defendant and upon his instructions in making the sales at the price charged and was himself without any criminal intent.

The judgments of the district court are affirmed.